UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

WELLS FARGO BANK NA,
*acting by and through Hudson Americas, LLC, its attorney-in-fact*,

        Appellant,

v.

MICHAEL H. DILWORTH,

        Appellee.

Case No. 14-CV-375-JPS

ORDER

On June 10, 2013, the debtor, Michael Dilworth, filed a voluntary Chapter 11 bankruptcy petition. Wells Fargo Bank, acting by and through Hudson Americas, LLC (collectively, "Hudson"), moved for relief from the automatic stay. Bankruptcy Judge Pamela Pepper heard that motion on February 18, 2014, and rendered a decision denying the motion a day later. Hudson appealed that decision, the parties fully briefed the matter, and it now comes before the Court for a decision.

1.     BACKGROUND

Mr. Dilworth is (or was) the controlling member of various limited liability companies ("LLCs"). Those LLCs entered into various transactions with Hudson[1] to finance the acquisition of residential real estate properties. Mr. Dilworth also personally guaranteed the obligations assumed by the LLCs in those transactions.

---

[1] In reality, Mr. Dilworth entered into the transactions with M&I Bank but, through a series of mergers and assignments, the notes resulting from those transactions ended up in Hudson's hands. Because that series of events is not relevant to this case, the Court will simply treat the transactions as having been between Mr. Dilworth and Hudson.

The transactions resulted in a series of notes and agreements. All included a requirement of consent before any of the covered properties were transferred; failure to receive consent would result in the note in question becoming payable immediately and subject to a 3% service charge added to the unpaid balance of the loan.

In spite of that provision, five of Mr. Dilworth's LLCs transferred their real estate assets to Mr. Dilworth. Mr. Dilworth agreed to personally assume the LLC's obligations and liabilities (although, of course, with respect to the notes, Mr. Dilworth had already agreed to be personally bound). There is no equity in any of the transferred properties.

On the other hand, Mr. Dilworth continues to be a substantial or controlling member of other LLCs that own other equity-bearing properties. He did not cause any of those properties to be transferred to himself.

At one point, the total loan obligations related to Mr. Dilworth's properties approached $100,000,000.00, but through payments and negotiations approximately one-fifth of that amount remained in June of 2013. Negotiations fell through on Mr. Dilworth's attempt to obtain a long-term renewal on that remaining amount, and he could not otherwise refinance or sell the properties.

Shortly after coordinating the transfer of the equity-less properties to himself, Mr. Dilworth filed for Chapter 11 bankruptcy protection. He filed disclosure statements as part of his bankruptcy case; his disclosures make clear that Hudson has claims against him of more than $20,000,000.00. He proposed to pay the secured portion of that debt (approximately $16,500,000.00) at a rate of 4.5% over 25 years, with other terms. As to the remainder, he proposed to pay a pro-rata share of $25,000.00. Meanwhile, Mr. Dilworth continued to draw a salary of $5,000.00 from Ener-Con

Companies, Inc., which manages the properties held by Mr. Dilworth's LLCs. That $5,000.00 monthly salary, though, does not begin to cover Mr. Dilworth's stated monthly expenses of approximately $30,000.00, comprised of a mortgage of, among other things, approximately $18,500.00 per month; monthly recreation expenses of $2,750.00 per month; and monthly lawn maintenance/snow plowing fees of $1,650.00. Mr. Dilworth anticipates making up that shortfall by drawing on non-exempt investment assets.

Pursuant to 11 U.S.C. § 362(a), Mr. Dilworth received an automatic stay when he initiated his bankruptcy case. Hudson, however, requested that Judge Pepper lift that stay. On February 18, 2014, Judge Pepper held a hearing on Hudson's motion, and issued an order the following day denying that request for relief.

The matter comes before the Court on Hudson's appeal of Judge Pepper's decision denying Hudson's request to lift the automatic stay.

2. DISCUSSION

The Court must review the Judge Pepper's rulings on the automatic stay for an abuse of discretion and review her underlying factual findings for clear error. *See, e.g.*, *In re Alexander*, 435 Fed. App'x 563, 564 (7th Cir. 2011) (citing *Colon v. Option One Mortg. Corp.*, 319 F.3d 912, 916 (7th Cir. 2003); *In re Williams*, 144 F.3d 544, 546 (7th Cir. 1998); *In re Vitreous Steel Prods. Co.*, 911 F.2d 1223, 1231–32 (7th Cir. 1990); *In re Boomgarden*, 780 F.2d 657, 660 (7th Cir. 1985)). Of course, as the Seventh Circuit has made clear, "a court necessarily abuses its discretion when its decision is based solely on an erroneous conclusion of law," meaning that "[w]hen reviewing the bankruptcy judge's conclusions of law," the Court should apply a *de novo* standard. *Colon*, 319 F.3d 912, 916 (7th Cir. 2003) (citing *United Air Lines, Inc. v. Int'l Ass'n of*

*Machinist & Aerospace Workers, AFL-CIO*, 243 F.3d 349, 361 (7th Cir. 2001); *Meyer v. Rigdon*, 36 F.3d 1375, 1378 (7th Cir. 1994)).

11 U.S.C. § 362(d) requires that bankruptcy judges lift or otherwise modify the automatic stay in four separate cases:

(1) "for cause, including the lack of adequate protection of an interest in the property of such party in interest";

(2) with respect to a stay against property if both

    (a) "the debtor does not have an equity in such property," and

    (b) "such property is not necessary to an effective reorganization";

(3) in any case where a secured creditor seeks to lift the stay against "single asset real estate," unless the debtor has either

    (a) "filed a plan of reorganization that has a reasonable possibility of being confirmed within a reasonable time," or

    (b) "commenced monthly payments" that are attributable to rents from the property and "in an amount equal to interest at the then-applicable nondefault contract rate,"; and

(4) in any case where a secured creditor seeks to lift the stay against "real property," if the bankruptcy judge "finds that the filing of the petition was part of a scheme to delay, hinder, or defraud creditors that involved either"

    (a) "transfer of all or part ownership of, or other interest in, such real property without the consent of the secured creditor or court approval"; or

    (b) "multiple bankruptcy filings affecting such real property."

11 U.S.C. §§ 362(d)(1–4). Hudson argues that the first, second, and fourth[2] of these circumstances apply in this case, and that, accordingly, Judge Pepper erred in denying Hudson's request for relief from the automatic stay. The Court will address each, in turn.

    2.1    11 U.S.C. § 362(d)(1)

11 U.S.C. § 362(d)(1) allows for the stay to be lifted "for cause." Hudson asserts that cause existed to lift the stay because Mr. Dilworth failed to "deal with Hudson fairly when he transferred the properties…to himself, mere days before filing for bankruptcy protection." (Docket #2 at 9). Hudson points out that the loans at issue had either already matured or were set to do so shortly after Mr. Dilworth filed for bankruptcy. (Docket #2 at 9). Accordingly, the stay prevents Hudson from "exercising its state law remedies" as to the loans and delays foreclosure proceedings. (Docket #2 at 9–11). Meanwhile, Mr. Dilworth's asserted savings from having combined the properties into a single bankruptcy filing (approximately $8,500.00), pale in comparison to the 3% fee triggered by the unauthorized transfer (more than $400,000.00). (Docket #2 at 9–10). Moreover, the fact that Mr. Dilworth already had personally guaranteed the loans in question evidences the fact that he provided little or no consideration in exchange for the transfer of properties to him, in turn establishing the sham nature of the transfers. (Docket #2 at 11). Hudson also asserts that its interests are not adequately protected, given Mr. Dilworth's apparently difficult financial state. (Docket #2 at 11–12).

---

[2]Hudson does not appear to be arguing that 11 U.S.C. §§ 362(d)(3) should apply, presumably because Mr. Dilworth is making adequate protection payments.

Mr. Dilworth argues that this issue was not presented to Judge Pepper and is, therefore, not properly before the Court on appeal. (Docket #3 at 7). Further, he argues that, even if the issue is properly before the Court, Hudson has not shown cause to lift the stay. (Docket #3 at 8–12).

The Court begins by noting that, in its reply brief, Hudson does not contest Mr. Dilworth's contention that the 11 U.S.C. § 362(d)(1) issue is not properly before the Court. Accordingly, he has waived any argument against that point. *See, e.g.*, *In re Lamont*, 740 F.3d 397, 410 (7th Cir. 2014) (citing *Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 466 (7th Cir. 2010) ("Failure to respond to an argument…results in waiver.")).

However, even if Hudson had not waived that issue, it would not be entitled to relief on this point. Aside from the fact that it offered practically no legal authority for its assertion that cause existed to lift the stay, there is no reason to find that Judge Pepper's finding "a dearth of evidence indicating any malintent" (Docket #1, Ex. 17, at 166) or bad faith was clearly erroneous. There is also no basis to find that she erred (or even reached) the legal merits of this issue. Finally, Mr. Dilworth appears to have been making monthly payments to Hudson that would adequately protect Hudson's interest and further to have been ensuring that the properties' values are protected.

For these reasons, the Court finds that Hudson is not entitled to reversal on this ground.

2.2     11 U.S.C. § 362(d)(2)

Under 11 U.S.C. §§ 362(d)(2), stay relief is appropriate where the properties in question have no equity and are not necessary to an effective reorganization.

The parties agreed that the properties had no equity, so that first requirement is not at issue.

As to the second, it was Mr. Dilworth's burden to establish that the properties were necessary to an effective reorganization. *United Savings Ass'n of Texas v. Timbers of Inwood Forest Assoc., LTD*, 484 U.S. 365, 375 (1988) ("Once the movant under § 362(d)(2) establishes that he is an undersecured creditor, it is the burden of the debtor to establish that the collateral at issue is 'necessary to an effective reorganization.'"). The Supreme Court defined property necessary to an effective reorganization as "property [that] is essential for an effective reorganization that is in prospect. This means…that there must be 'a reasonable possibility of a successful reorganization within a reasonable time.'" *Id.* at 375–76. Other courts have found that this means that the property "must be logically required for a reorganization which has a reasonable possibility of succeeding within a reasonable time." *See, e.g.*, *In re Del-A-Rae, Inc.*, 447 B.R. 915, 919 (Bankr. S.D. Ga. 2011) (citing *In re Simmons*, 446 B.R. 646, 649 (Bankr. S.D. Ga. 2010); *In re Benton*, Case No. 09–41429 at 6 (Bankr. S.D. Ga. Dec. 16, 2010)). With that said, though, "the test is one of feasibility," meaning that the bankruptcy judge need not find a plan *per se* confirmable; rather, it should be enough that a plan has a realistic chance of being confirmed. *See, e.g.*, *In re Ridge Mountain, LLC*, No. 12-31090, 2012 WL 6681838 at *13 (Bankr. N.D.N.Y. Dec. 21, 2012) (citing *In re 160 Bleeder St. Assocs.*, 156 B.R. 405, 411 (S.D.N.Y. 1993); *In re East–West Assocs.*, 106 Bankr. 767, 774 (S.D.N.Y. 1989); *In re Ritz–Carlton of D.C., Inc.*, 98 Bankr. 170, 172 (S.D.N.Y. 1989); *In re Fenske*, 96 Bankr. 244 (Bankr. D.N.D. 1988); *In re White Plains Dev. Corp.*, 140 Bankr. 948, 950 (Bankr. S.D.N.Y. 1992)). The debtor's burden to establish this, however, increases over time. *See, e.g.*, *In re Ridge Mountain, LLC*, 2012 WL 6681838 at *13 (citing *In re Ritz-

*Carlton of D.C., Inc.*, 98 B.R. 170, 172 (S.D.N.Y. 1989)); *In re Ashgrove Apts. of DeKalb Cty., Ltd.*, 121 B.R. 752, 756 (Bankr. S.D. Oh. 1990).

Judge Pepper found that Mr. Dilworth had met this burden. (*See* Docket #1, Ex. 15, at 125–26). In full, she stated:

> The Court conceded that it did not appear that these properties, right now, could produce sufficient income to guarantee full satisfaction of Hudson's debt. But the Court found that the evidence clearly demonstrated that the properties were cash flowing, that the debtor had grown cash during the case, and that the debtor was using some of that cash to make adequate protection payments against Hudson's debt. The Court opined that the standard for granting relief from stay was different from the standard for confirmation for a reason: § 362 provided early relief for those individual creditors who were not adequately protected, so that they did not have to linger in the case until confirmation in a vulnerable state. That was not, the Court stated, the situation here. Hudson had received and would continue to receive adequate protection payments. The Court further found that a debtor who was operating cash-flowing businesses clearly could demonstrate that those businesses were necessary for effective reorganization, even if down the road there might be a question of whether the cash flow was sufficient to support the particular reorganization plan. Therefore, the Court denied the motion for relief from stay on § 363(d)(2) grounds.

(Docket #1, Ex. 15, at 125–26).

Judge Pepper properly identified the legal standard in this case. To be sure, because Judge Pepper rendered her decision several months into the case, Mr. Dilworth's burden to support his plan was higher. But, Judge Pepper was still correct in determining that the standard was not the same as would be necessary for confirmation.[3] Therefore, from a legal standpoint,

---

[3]That is, assuming that the burden on the debtor increases over time, presumably it still would not reach the level of what is required for confirmation until the point of the confirmation hearing.

there was no problem with her determination: she applied an appropriate legal standard.

Likewise, from a factual standpoint, her decision must stand. Hudson provides the Court with arguments and figures that it asserts prove that Mr. Dilworth's plan has no realistic chance of approval. But nothing establishes that Judge Pepper's factual determinations in that regard were clearly erroneous. "A finding is clearly erroneous only when th[e] court is left with a definite and firm conviction that a mistake has been committed. Clear error may be found if the trial judge's interpretation of the facts is implausible, illogical, internally inconsistent or contradicted by documentary or other extrinsic evidence." *DeliverMed Holdings, LLC v. Schaltenbrand*, 734 F.3d 616, 622 (7th Cir. 2013) (internal quotations omitted) (citing *Furry v. United States*, 712 F.3d 988, 992 (7th Cir. 2013)*; Cohen Dev. Co. v. JMJ Props.*, 317 F.3d 729, 735 (7th Cir. 2003); *Bowles v. Quantum Chem. Co.*, 266 F.3d 622, 630 (7th Cir. 2001); *EEOC v. Sears Roebuck & Co.*, 839 F.2d 302, 309 (7th Cir. 1988)). Perhaps it could have been more detailed, but nothing in the materials submitted establishes that Judge Pepper made any sort of mistake in her analysis.

Judge Pepper's factual determination was not clearly erroneous and she applied an appropriate legal standard to the facts as she found them. The Court cannot identify—and Hudson has not provided—any legal authority to establish that, in deciding that Mr. Dilworth met his burden on this point, Judge Pepper erred in any way. Their recitation of facts affecting the plan does not make Judge Pepper's factual determinations clearly erroneous; and there is no controlling (or even persuasive) law that would establish that she erred in finding that those facts do not call for 11 U.S.C. § 362(d)(2) relief. Accordingly, the Court is obliged to affirm her decision on this issue.

### 2.3 11 U.S.C. § 362(d)(4)

11 U.S.C. § 362(d)(4) calls for lifting the automatic stay when "the court finds that the filing of the petition was part of a scheme to delay, hinder, or defraud creditors," if the scheme involved "transfer of all or part ownership of, or other interest in, such real property without the consent of the secured creditor or court or approval." 11 U.S.C. § 362(d)(4)(A). In that way, "permits the bankruptcy court to grant so-called 'in rem' relief from the automatic stay to the creditor to address schemes using bankruptcy to thwart legitimate foreclosure efforts through one or more transfers of interest in real property or…multiple bankruptcy filings affecting the subject in rem property." *In re Alakozai*, 499 B.R. 698 (B.A.P. 9th Cir. 2013).

There can be no question that Mr. Dilworth transferred ownership of the properties in question without consent of Hudson. So, the only question is whether Judge Pepper erred in finding that Mr. Dilworth's filing of his petition was not a part of a scheme to delay, hinder, or defraud creditors.

In support of Judge Pepper's decision, Mr. Dilworth cites to *Federal Nat'l Mortgage Ass'n v. Bruckner*, 489 B.R. 93 (E.D. Wis. 2012). In *Bruckner*, Judge Lynn Adelman of this district considered whether a bankruptcy judge had erred in finding that there was not a scheme to delay, hinder, or defraud creditors. *See id.* at 99. The debtor in that case—much like Mr. Dilworth, here—held multiple properties in different LLCs; he caused those LLCs to transfer *all* of the properties to him before beginning bankruptcy proceedings. *Id.* at 96. The mortgagor of several of those transferred properties sought to lift the automatic stay pursuant to 11 U.S.C. § 362(d)(4), arguing that the transfer was part of a scheme to delay, hinder, or defraud. *See id.* at 99. The bankruptcy judge denied relief, and Judge Adelman

affirmed, finding that the bankruptcy judge had not abused his discretion. *Id.* at 99–100.

There is one significant difference between the facts in *Bruckner* and the facts in this case. In *Bruckner*, the debtor transferred *all* of his properties to himself before beginning bankruptcy proceedings. In this case, on the other hand, Mr. Dilworth transferred only *some* of the properties to himself pre-bankruptcy, specifically the ones in the most financial distress. Accordingly, *Bruckner* is not perfectly on point, and the Court will not treat it as controlling.

In any event, though, the Court still does not find that it should reverse Judge Pepper's decision. In discussing the outstanding 11 U.S.C. § 362(d)(4) request, Judge Pepper noted:

> Before turning to the debtor's attorney for its case-in-chief, the Court addressed the motion for relief from stay as to §363(d)(4). The Court emphasized that at least two judges in this district had held that standing alone, the fact that a debtor moved assets from debtor-owned LLCs to the individual debtor prior to filing for relief did not constitute grounds to grant relief under §362(d)(4). The Court noted that in its experience, it was not unusual for bankruptcy counsel to advise such clients to consolidate their properties as a means to cut costs, facilitate administration, and resolve all of the debtor's issues in a single case. The Court found that the evidence Hudson had presented failed to demonstrate any effort by the debtor to actively utilize the bankruptcy system as a means to hinder, delay, or defraud creditors. Therefore, the Court denied Hudson's motion on §363(d)(4) grounds.

(Docket #1, Ex. 15, at 125).

Judge Pepper is correct that, "standing alone, the fact that a debtor moved assets from debtor-owned LLCs to the individual debtor prior to filing for relief [should] not constitute grounds to grant relief under

§ 362(d)(4)." While *Bruckner* is not perfectly on point, it demonstrates that these sorts of transfers *may* be appropriate. This Court certainly does not believe it would be appropriate to advance a rule that any pre-bankruptcy transfers of this sort are *per se* illegal. So, Judge Pepper did not reach an erroneous conclusion of law on that point.

What remains is Judge Pepper's determination that the evidence did not support a finding that Mr. Dilworth's actions constituted a scheme to hinder, delay, or defraud. Judge Pepper "found that the evidence Hudson had presented failed to demonstrate any effort by the debtor to actively utilize the bankruptcy system as a means to hinder, delay, or defraud creditors." (Docket #1, Ex. 15, at 125). This certainly was not an abuse of her discretion. Without evidence to support a scheme to hinder, delay, or defraud, Judge Pepper would have had no basis to find that 11 U.S.C. § 362(d)(4) relief was appropriate. To be sure, as Hudson now asserts, there is some evidence that Mr. Dilworth's transfers were questionable—chief among that evidence is the fact that Mr. Dilworth transferred only the distressed properties, leaving the non-distressed properties outside of the bankruptcy. But, on the other hand, Judge Pepper also found that the transferred properties were creating cash flow and that Mr. Dilworth was making payments to Hudson. Likewise, Mr. Dilworth testified he had transferred the properties on the basis of advice from counsel, who informed him that "we think you're going to have to put these LLC's in your own name to save funds. Those funds, in turn, will help you emerge faster out of Chapter 11 and pay creditors and unsecured creditors." (Docket #1, Ex. 17, at 149). On that last point, Judge Pepper noted that "it was not unusual for bankruptcy counsel to advise such clients to consolidate their properties as a means to cut costs, facilitate administration, and resolve all of the debtor's

issues in a single case." (Docket #1, Ex. 15, at 125). In sum, there is evidence that could support either determination—that 11 U.S.C. § 362(b)(4) relief is or is not appropriate—but none of Judge Pepper's findings were clearly erroneous. Again, it would have been preferable for her to have gone into a more detailed analysis of the evidence and how it supported her decision. But, given that the evidence does not clearly support one decision over another, the Court simply cannot conclude that Judge Pepper abused her discretion in reaching her decision.

> In *Bruckner*, Judge Adelman noted that:
>
> I can find nothing in bankruptcy law indicating that the kind of pre-bankruptcy consolidation effected by Bruckner in this case necessarily constitutes a scheme to delay, hinder or defraud creditors. Perhaps a bankruptcy court would not abuse its discretion if it found that acts similar to Bruckner's constituted a scheme to delay, hinder or defraud creditors. But in this case the bankruptcy court concluded that Bruckner's acts did not constitute such a scheme, and I cannot say that this conclusion was based on clearly erroneous findings of fact or involved an abuse of discretion.

*Bruckner*, 489 B.R. at 100. That is the precise case, here. Nothing in bankruptcy law compels a decision in any direction in this case. Another bankruptcy judge reviewing the case may have decided it in precisely the opposite way. But, likewise, Judge Pepper's decision was not an abuse of discretion, and so does not warrant reversal.

3. CONCLUSION

The Court is unable to conclude that Judge Pepper's decision was in error. Perhaps Mr. Dilworth's plan will ultimately prove unconfirmable, but that is a decision for Judge Pepper to make at the confirmation hearing. Her decision not to lift the stay turned on other standards, none of which the

Court finds were in error. Therefore, the Court must affirm Judge Pepper's decision.

In closing, the Court notes that oral argument is unnecessary for the resolution of this case. Therefore, the Court will deny Hudson's request for an oral argument.

Accordingly,

IT IS ORDERED that the bankruptcy court's decision finding that Hudson is not entitled to relief from the automatic stay, pursuant to 11 U.S.C. § 362(d), be and the same is hereby AFFIRMED;

IT IS FURTHER ORDERED that Hudson's request for oral argument be and the same is hereby DENIED; and

IT IS FURTHER ORDERED that this appeal be and the same is hereby DISMISSED.

The Clerk of Court is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin, this 15th day of October, 2014.

BY THE COURT:

J.P. Stadtmueller
U.S. District Judge